## Richmond.

### BUCHANAN v. ORANGE.

March 16, 1916.

1. LANDLORD AND TENANT—*Lease of Floor Space—Failure to Furnish Heat—Eviction.*—If a landlord lets the floor of a building to a tenant and agrees to furnish the tenant furnace heat and lights, and fails to do so, and his failure renders the leased premises unfit for occupancy for the purposes for which the lease was entered into, his failure constitutes a constructive eviction from the premises, and the tenant may vacate them, and upon doing so, for such cause, is entitled to a release from the payment of rent not due when the premises are vacated. Actual force is not necessary to constitute a wrongful eviction in such a case, nor need the landlord intend by his conduct to drive the tenant from the premises. Any wrongful act of the landlord, either of commission or omission, which renders the premises unfit for occupancy for the purposes for which they are leased is sufficient to constitute an eviction.

Error to a judgment of the Law and Equity Court of the city of Richmond on an attachment for rent. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*McGuire, Riely, Bryan & Eggleston,* for the plaintiff in error.

*G. G. Garland* and *O'Flaherty, Fulton & Byrd,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an attachment proceeding brought by the plaintiff in error to recover of the defendant in error rent to become due under a certain contract of lease.

The evidence shows that Mrs. G. T. Orange entered into a

deed of lease in writing, dated May 13, 1911, with D. Buchanan & Son, whereby she leased, for the term of five years from August 1, 1911, the second floor of a brick storehouse on Broad street, in the city of Richmond, to be used as a millinery establishment; the monthly rent of sixty dollars being payable on the first day of each month. The lessor covenanted with her for quiet enjoyment, and further stipulated to furnish her, free from cost, with water, light and furnace heat. Mrs. Orange continued in possession of the demised premises until October 31, 1914, when she removed to other quarters. After she toook possession of the second floor of the Buchanan building, she was told that the furnace was not large enough to heat the floor that she had leased, and that a stove would have to be put in to furnish her with heat. She told the agent of her landlord that her greatest inducement to come into the place was to get furnace heat; that he could put in the stove upon the condition that she was not to have her goods damaged by ashes and soot, and that she was to get proper results, and not to have to make a fire in it herself. She further testifies that she had to have the fire made a considerable portion of the time herself; that proper results were not obtained from the stove; that the premises for that reason became untenantable, not suitable and unfit for her business, and unfit to shelter anything in the winter time; that she complained of the lack of heat throughout her tenancy; that she and her employees lost time because of the lack of heat, and that the place was never comfortable when it was necessary to have heat; that when she moved out the cold season had begun, and the fire was not sufficient to keep her comfortable; and that the lights were so bad that she could not thread a needle or tell one color from another, and were not more than a candle in a bed room. This testimony of the defendant in error with respect to the discomfort of the premises from the lack of heat and lights is abundantly supported by numerous other witnesses who were familiar with the premises.

After several letters had been written to Mr. Buchanan by the attorneys for Mrs. Orange, endeavoring to settle the matter of defective heating and lighting, and the damages resulting therefrom, without result, Mrs. Orange, through her attorney, addressed a letter to Ramsay & Co., the agents of Buchanan & Co., dated August 15, 1914, saying: "I hereby notify you that I must insist, as I have done heretofore, upon your furnishing the furnace heat and electric lights as contracted for. As I have contended throughout my occupancy of the premises, the stove heat is wholly inadequate for my business, that is, the store is too large and airy for a stove, and the place at all times is cold, and the dust and dirt necessarily arising from the use of the stove, coal and ashes make it detrimental to my business and damaging to my goods to such an extent that I have suffered and continue to suffer great loss by same. At the time the stove was put in there I insisted on the furnace heat, as called for by the contract, and stated clearly to you that it was one reason for my removing from the store which I formerly occupied—that it had not furnace heat. As the winter was on and the cold was intense and the place uninhabitable, it was absolutely necessary that some heat be furnished, and you put in the stove, but over my earnest protest against stove heat and request for proper heating of the building.

"Further, Mr. Buchanan promised electric lights for the store, which have never been furnished me, and the gas light in the place has been a means of great loss to me, because it is insufficient for lighting the premises, the place being quite large.

"The fall season is coming on and it is necessary that the furnace heat be installed immediately and the proper lights, as called for under the contract, be furnished, otherwise I will have to vacate the premises, but in no case waive my rights to damages because of the loss I have suffered as a result of your failure to perform the covenants of your lease."

If she had not done so before, this letter certainly revoked the conditional assent that Mrs. Orange had given, in the beginning, to the stove heat, and calling attention to the fact that the fall was approaching, insisted that furnace heat be given her, and stated that she would have to vacate the premises unless the proper heating and lighting were installed. Finding that the plaintiff in error was not going to remedy the conditions, the defendant in error, after the cold weather had set in, and the place was again found to be untenantable, in October, 1914, determined that she could no longer put up with the existing conditions, and vacated the premises. From the verdict of the jury and the judgment of the lower court upholding her course, this appeal has been taken.

The question to be determined is whether the facts stated constitute a constructive eviction of the defendant in error from the leased premises, thereby relieving her from the payment of the rent not due.

It is to be observed in the outset that the subject of the lease involved in this case was not land, out of which the rigid principles of the common law governing the relation of landlord and tenant grew, owing to the sanctity with which land was invested in the eyes of the common law; but the subject of the lease was only a floor in the building, the landlord controlling his own land and all the rest of the building.

In Minor on Real Property, after alluding to the rigid common law principle that, although the building on the leased land may be destroyed, yet the tenant continued to be liable for rent, adds, "that where one leases a room or apartments in a building, which is destroyed by fire, he is at common law relieved from his obligation to pay rent, because there is no land leased strictly speaking, but only the building out of which the rent issues, the destruction of that bringing the case within the common law exception." Minor on Real Property, vol. 1, p. 495.

In Taylor on Landlord and Tenant (9th Ed.), sec. 309A, it

is said: "The rule is that while an eviction was originally a dispossession of the tenant by some act of his landlord, or by failure of the latter's title, it has now come to include any wrongful act of the landlord, either of commission or omission, which may result in a substantial interference with the tenant's possession or enjoyment, in whole or in part. Actual force is not essential to constitute a wrongful eviction."

We are of opinion that the great weight of modern authority sustains the view that the facts of the instant case constitute a constructive eviction and entitle the defendant to a release from the payment of rent not due when the premises are vacated.

In *Bass* v. *Rollins,* 63 Minn. 226, 65 N. W. 348, an agreement was made in the lease of an apartment that sufficient heat should be furnished, and the failure to furnish sufficient heat was held to justify the tenant in vacating the premises. In *Le Prichard* v. *Thurber,* 84 N. J. L. 193, 86 Atl. 953, a tenant was held to be justified in abandoning an apartment because of the failure of the landlord to comply with an agreement concerning the steam heat. The action was only for damages after the tenant had left, and it seems to have been taken as a matter of course that the tenant was warranted in abandoning the premises. In the case of *Johnson* v. *Tucker,* 136 Wis. 505, 117 N. W. 1002, 128 Am. St. Rep. 1097, which was a case of abandoning an apartment because of failure to comply with an agreement as to heat, it was held that the question of eviction or of justifiable abandonment, was properly left to the jury.

In *Wade* v. *Herndl,* 127 Wis. 544, 107 N. W. 4, 7 Ann. Cas. 591, 5 L. R. A. (N. S.) 855, the court, in affirming the judgment said: "The law governing the rights and liabilities of landlord and tenant in cases where the tenant asserts eviction from the premises, is that actual expulsion is not necessary, but that any act of the landlord or of anyone who acts under his authority . . . which so disturbs the tenant's enjoy-

ment of the premises as to render them unfit for occupancy for the purposes for which they are leased, is an eviction, and whenever it takes place the tenant is released from the obligations under the lease to pay rent accruing thereafter."

In *Edmison* v. *Lowry,* 3 S. D. 77, 52 N. W. 583, 17 L. R. A. 275, 44 Am. St. Rep. 774, the court instructed the jury as follows: "As to the matter of eviction it is not necessary there should be any act of a permanent character, but any act which has the effect of depriving a tenant of the free enjoyment of the premises or any part thereof, or any appurtenances pertaining to these premises, must be treated as an eviction." On appeal the Supreme Court of South Dakota held that the jury were correctly charged.

In the case of *Wade* v. *Herndl, supra,* and *Central Business College Co.* v. *Rutherford,* 47 Colo. 277, 107 Pac. 279, 27 L. R. A. (N. S.) 637, 19 Ann. Cas. 689, elaborate notes are appended in which the subject is discussed and a great many authorities cited in support of the view we have taken, touching the law applicable to the instant case. We do not, however, deem it necessary to prolong this opinion with further citations on the question of constructive eviction, except to say that the plaintiff in error has called our attention to the case of *Tunis* v. *Grandy, &c.,* 22 Gratt. (63 Va.) 110, which is not, in our opinion, in conflict with the law as established by the authorities we have cited. In that case the facts were wholly different from the present case. It did not involve, as in the case before us, the question of constructive eviction, where the whole premises were abandoned because of some act or failure to act on the part of the landlord, which rendered the full enjoyment of the premises impossible.

The plaintiff in error contends that in order for the acts or defaults of the landlord to amount to constructive eviction, they must be of a grave and permanent character, and they must clearly indicate an intention on the part of the landlord that the tenant shall no longer continue to hold the premises or

some material part thereof. Our view of this proposition is so clearly expressed by the learned judge of the lower court, in his opinion filed with the record, that we cannot do better than quote what is there said:

"It is certainly difficult for the modern jurist to apply the stringent common law principles concerning eviction as between landlord and tenant, to the conditions of the present day. By eviction at common law originally was manifestly meant an actual dispossession of the tenant by the landlord, in order that the landlord might take possession of the premises, and with an intention on his part so to do, or the eviction may occur under the paramount title of a stranger. Whether the eviction be called actual or constructive, at common law, there must be in the mind of the landlord the intention of driving the tenant off of the land leased, so that he may take possession of it. To apply this idea to the modern custom of leasing a floor in a building, for business or living purposes, under a contract with varying stipulations as to the duties of the landlord towards the tenant, incompatible with the common law lease, is a task impossible of exact accomplishment. It is manifest in the cases referred to above by me and in the cases cited by counsel at bar, that while the courts seem to hold to the technical doctrine of intention, yet the facts of no case in which the tenant was held to be justifiable, evinced an intention on the part of the landlord to put the tenant out. On the contrary, the tenant abandoned for reasons claimed by him to justify abandonment, and the landlord was trying to hold him. It seems to me that the law would be stultifying itself to lay down as a maxim in these cases that there can be no abandonment unless it be shown that the landlord intended to dispossess the tenant. I am satisfied that under the more modern doctrine in cases of this character, the intention of the landlord should be held to be a matter of law or of fact, to be inferred from the acts, so that if the acts of the landlord as a matter of fact resulted in dispossessing the tenant by giving him justi-

fiable cause to vacate the premises, then the law imputes the intention to the landlord on the general principle that every man must be held to intend the proximate consequences of his act."

The more important of the objections taken by the plaintiff in error to the action of the court in giving and refusing instructions have been dealt with, and disposed of, in what has been already said. We have, however, considered carefully all of the instructions and are satisfied that those given by the court fully and fairly submitted the case to the jury, without the slightest prejudice to the rights of the plaintiff in error.

In conclusion, we are of opinion that the judgment complained of is without error and must, therefore, be affirmed.

*Affirmed.*