829 F.2d 1120
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J.R. MULLINS and/or Mullins Motors, Inc. Plaintiff-Appellee
v.
SOUTHERN MOTORS, INC.; Perry C. Cartwright; Frances M.
Cartwright, Defendants-Appellants.
Bank of Virginia, Defendant.
 No. 87-2029.
 United States Court of Appeals, Fourth Circuit.
 Argued July 29, 1987.
Decided Sept. 18, 1987.
 
 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Jackson L. Kiser, District Judge. (CA-85-0326)
 E. Gay Leonard (Robert Tayloe Copeland; Copeland, Molinary & Bieger, on brief), for appellants.
 George Marvin Warren, Jr. (Warren & Dickert, on brief), Stuart Bland Campbell, Jr. (Campbell, Young & Crewe, on brief), for appellees.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants Perry C. Cartwright, Sr., Frances M. Cartwright and Southern Motors, Inc. appeal the district court's finding that their tenant Mullins Motors, Inc. was constructively evicted. Since we find that the district court's decision was amply supported by the evidence, we affirm.
 
 
 2
 On March 5, 1981, Perry C. Cartwright, Sr., Frances M. Cartwright, and Southern Motors, Inc., a corporation wholly owned by Perry Cartwright, leased an automobile dealership facility located near Bristol, Virginia, to Mullins Motors, Inc. The leases were guaranteed by J. R. Mullins.
 
 
 3
 Mullins Motors began to experience problems with the septic system shortly after moving onto the leased premises in March of 1981. Sewage would back up and overflow in the restrooms, and at times run into the public area of the service department, the customers' lounge, and the showroom. The restrooms were sometimes out of service for two or three consecutive days. Customers and employees were forced to use restroom facilities at a nearby restaurant.
 
 
 4
 In April, 1981, Mullins Motors employed a septic company to pump several truckloads of sewage from the system. In May, 1981, Perry C. Cartwright, Sr. hired a contractor to install an extension to the system and new field lines, but problems resumed that summer. The tenant alleges that in January of 1982, the manager of Mullins Motors notified Perry C. Cartwright, Sr. by telephone and letter that septic system problems were occurring. The tenant further alleges that in April, Perry C. Cartwright, Sr. was notified of the continuing problems by letter from the president of Mullins Motors. Testimony indicated that problems with the septic system had become worse during May and June of 1982 and on July 9, Mullins Motors vacated the premises.
 
 
 5
 The Cartwrights and Southern Motors, Inc. filed for bankruptcy under Chapter 11 of the Bankruptcy Code on January 15, 1982. The bankruptcy court heard their claim for rent and found that the tenant had been constructively evicted from the property and owed no rental payments after July 9, 1982.
 
 
 6
 The district court reviewed the decision of the bankruptcy court de novo and reached the same conclusion, i.e., the failure to repair the septic system and the condition of the premises as a result thereof amounted to a constructive eviction of Mullins.
 
 
 7
 The Landlords argue that there is no causal connection between the septic system and the overflowing toilets and, therefore, the district court's finding that the septic system was defective was clearly erroneous. There is no merit to the argument.
 
 
 8
 Perry C. Cartwright, Sr. admitted that natural conditions caused the septic system to overflow both before and after the tenant took possession under the lease. Furthermore, the record is replete with the testimony of various witnesses regarding the current nature of the problems with the septic system. In addition to the testimony of several of tenant's employees, there was also testimony from a serviceman from a septic tank service company that the septic system was not working properly. In light of the vast amount of testimony, it cannot be said that the finding of fact by the district court that the defective septic system was the cause of the overflowing toilets was clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564 (1985).
 
 
 9
 The Landlords next contend that the district court should have considered separately the obligations of the tenant under each lease. They point to their filing of separate complaints seeking monetary damages from the tenant. The Landlords contend that there was no showing that the tenant was unable to remain in possession of one piece of property because it was constructively evicted from the other piece of property.
 
 
 10
 No distinction between the two leases and the property leased thereunder was ever made, however, in the bankruptcy or district courts. In fact, all witnesses, and even counsel for the Cartwrights and Southern Motors, treated the property as one parcel which could not be separated or utilized by the tenant unless both parts were used together. Furthermore, there is nothing in the record to show how the parcel was divided and who owned which portion. Appellants' counsel cited proof in the record that there were two buildings. However, the same evidence referred to only one property.
 
 
 11
 The issue, not having been raised before the district court, cannot be considered by us now.
 
 
 12
 The Landlords also argue that the requirements for constructive eviction were not met. The Supreme Court of Virginia set forth the requirements for constructive eviction in Buchanan v. Orange, 118 Va. 511, 88 S.E.2d 52 (1916). In Buchanan, the court held that a tenant could consider itself constructively evicted when: (1) a defective condition existed on the premises; (2) the defective condition was the responsibility of the landlord to repair; (3) the condition required under the lease was breached by the landlord; (4) the tenant gave notice of the breach to the landlord; and (5) the tenant vacated the premises within a reasonable period of time.
 
 
 13
 As discussed above there was sufficient evidence to support the district court's finding that the septic system's defective condition was not the tenant's fault. Paragraph 12 of both leases clearly states that the Landlords had the duty "to repair any defective conditions in the septic systems upon the Property not occasioned by the negligence of Tenant." Furthermore, it is undisputed that the Landlords failed to repair the defective condition. Thus, the first three requirements for constructive eviction under Buchanan were satisfied.
 
 
 14
 The Landlords contend that they were never given notice of the defective condition. The district court found however that the Landlords were notified on at least two occasions: "The tenant ... mailed a couple of letters in early 1982 and telephoned Cartwright concerning continued problems." The Landlords argue that since the notices were not given by certified mail as the lease required, such notices were ineffective.
 
 
 15
 The Landlords seek to ignore the plain meaning of the lease. Paragraph 16(d) provided that: "Written notices hereunder shall be deemed made when mailed, if sent by certified or registered mail." The lease did not require that all notices be sent or given by certified mail. The purpose of paragraph 16(d) was to eliminate questions concerning the time written notice would be deemed to have been given if sent by certified or registered mail. The use of regular mail to give notice was not precluded. In any event, the evidence supports the district court's finding that Cartwright had actual notice of the defective condition of the septic system. Therefore, regardless of whether the Landlords received proper written notice, the fourth requirement of Buchanan was satisfied.
 
 
 16
 Finally, the Landlords contend that the tenant had waived its claim of constructive eviction. The general rule is that "no constructive eviction of a tenant by his landlord occurs unless the tenant abandons the premises within a reasonable time, by reason of the acts which he contends constitute an eviction." Cato v. Silling, 73 S.E.2d 731, 744 (W.Va.1951). The Landlords contend that the tenant remained on the premises too long and waived its right to consider itself constructively evicted.
 
 
 17
 The district court correctly concluded that "it was reasonable for the tenant to remain on the leased premises for slightly more than a year before claiming its right to claim constructive eviction."
 
 
 18
 The record shows that the septic system problem existed both before and after the tenant arrived on the scene. It was reasonable for the tenant to give the Landlords an opportunity to repair the problem. In fact, the Landlords did make an effort to effect repairs, but were unsuccessful. When the problem recurred, the tenant's right to claim constructive eviction arose again. After providing the Landlords a period of time to solve permanently the problem and seeing that the problem had worsened, the tenant reasonably vacated the premises.[1]
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Since the tenant justifiably vacated it cannot be held liable for any damage to the property which occurred, through no fault of its own, after its departure. Nor is the tenant obligated to pay the landlords' attorneys fees, which are provided for under the lease only in the event of the tenant's default