Nottingham Associates

   v.

Gloria Jean Christian

October 6, 1992

Case No. LT-1197–1

BY JUDGE T. J. MARKOW

This case comes before the court on appeal from General District Court. Plaintiff seeks payments of rent and late charges for the balance of a lease term. Defendant claims the lease was terminated because of constructive eviction. The relevant facts are as follows.

Gloria Jean Christian leased an apartment from Nottingham Associates. The original lease was for one year, October 1, 1984, to September 30, 1985, with automatic renewal unless three months notice was given. The lease was renewed, and Ms. Christian remained in possession until May 30, 1989, at which time she vacated the premises. Nottingham seeks the rent due on the balance of the lease for that year; *i.e.*, for the months of June through September, plus accrued late charges and attorney's fees.

Ms. Christian asserts that recent activities on the common areas that have lasted for over one year had rendered the complex an unsafe place to live and that she was therefore justified in terminating the lease. Examples of such activities include males congregating and engaging in drug activities, an offer to sell drugs to Ms. Christian, abusive language directed toward tenants, gunshots, and frequent police visits, all of which Ms. Christian complained to the landlord.

Ms. Christian is justified in terminating her lease and is not liable for the rent due on the balance of the lease term, if the circumstances complained of; *i.e.*, the drug activities, gunshots, etc., amount to a constructive eviction of Ms. Christian from the premises.

In *Buchanan v. Orange*, 118 Va. 511 (1916), one of the few Virginia Supreme Court cases on constructive eviction, Orange leased the second floor of a storehouse to be used as a millinery. Buchanan covenanted for her quiet enjoyment and agreed to furnish water, light, and furnace heat. After taking possession she was told that the furnace was inadequate to heat her floor and that a stove would have to be installed. Proper results were not obtained by the stove and Orange informed Buchanan of its inadequacy. She sought to hold him to his promise of furnace heat, but he did not remedy the situation. Orange vacated as a result. In deciding whether a constructive eviction had occurred, the court included within the definition of constructive eviction "any wrongful act of the landlord, either of commission or omission, which may result in a substantial interference with the tenant's possession or enjoyment, in whole or in part." 118 Va. at 515 (quoting Taylor on Landlord and Tenant (9th ed.), sec. 309A). The court further stated that:

> any act of the landlord or of anyone who acts under his authority . . . which so disturbs the tenant's enjoyment of the premises as to render them unfit for occupancy for the purposes for which they are leased, is an eviction, and whenever it takes place the tenant is released from the obligations under the lease to pay rent.

118 Va. at 516 (quoting *Wade v. Herndl*, 127 Wis. 544, 107 N.W. 4).

In the language of *Buchanan*, the drug-related activities cited by Ms. Christian have substantially interfered with her enjoyment of her home. She rented the apartment for the purpose of having a safe and comfortable place to live, and the activities complained of have impeded this purpose. However, *Buchanan* differs from the case at bar in that the act complained of therein was a specific omission of the landlord; *i.e.*, his failure to provide furnace heat as promised. In the instant case, the allegation is that the landlord has failed to provide a tenantable dwelling in terms of safety. However, the specific acts giving rise to such a failure were not committed by the landlord, but rather by third parties. In this regard:

> a tenant cannot assert the act of one other than the landlord as an eviction, unless he can show that such act was authorized by the landlord either expressly or impliedly . . . . he is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from.

49 Am. Jur. 2d *Landlord and Tenant* § 318. Indeed, a "wrongful act of a third person in disturbing the possession of a tenant does not constitute an eviction which the tenant can assert against the landlord, unless the landlord was obligated to protect the tenant against the act, or unless he authorized the third person to commit the act." *Id.* at 583 (footnote omitted). There is certainly no assertion that Nottingham authorized the acts herein complained of. The issue then revolves around whether Nottingham was under a duty to protect Ms. Christian from such occurrences.

According to the Restatement 2d of Torts 315, the general rule is that:

> [t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . .

Section 314A enumerates exceptions to this rule by giving examples of "special relationships" that would give rise to a duty to protect against third parties. Such examples include common carriers and innkeepers. Section 314A also includes business invitors within its class of exceptions, but Virginia declined to extend the exception to that category. In *Wright v. Webb*, 234 Va. 527 (1987), Webb was assaulted in a motel parking lot which was also used by an adjacent dinner theatre. In finding that the parking lot owner was not liable to Webb, the Supreme Court of Virginia refused to impose a "duty of care requiring a business invitor to take positive action to protect his business invitee from assault by third parties while the invitee is on the business premises." *Id.* at 530. In addition, the court equated the duty owed by a business invitor to his invitee with the duty owed by a landlord to his tenant, that is, one of reasonable care. *Id.*

Two Virginia cases specifically dealing with the landlord-tenant relationship, *Gulf Reston, Inc. v. Rogers*, 215 Va. 155 (1974), and *Klingbeil Management Group v. Vito*, 233 Va. 445 (1987), found that a landlord's duty did not extend to protecting his tenants from the criminal acts of third parties. In *Gulf Reston*, a trespasser on the roof of an apartment building threw a can of paint onto Rogers, who was on his patio. Rogers died of a heart attack eleven days later. The court "found no relevant case imposing a duty on a landlord to protect a tenant from isolated criminal acts of third persons merely be-

cause of the relationship of landlord and tenant." *Gulf Reston*, 215 Va. at 158. The court did note that:

> Several recent cases from other jurisdictions have recognized that under certain circumstances a landlord's appreciation of risk and harm from foreseeable criminal activities of third persons would impose upon him a duty to exercise reasonable care to provide adequate protection to his tenant, especially within those parts of the premises used in common by all the tenants. *Kline v. 1500 Mass. Ave. Apt. Corp., supra; Johnston v. Harris*, 387 Mich. 659, 198 N.W.2d 409 (1972). In those cases large apartment buildings were located in areas where frequent robberies and rapes were committed, and such occurrences in their apartment buildings were known to the landlords. They are not controlling here.

*Gulf Reston*, 215 Va. 159. The *Klingbeil* case involved the rape of a tenant in her apartment, for which the court also imposed no duty of protection upon the landlord. A factor distinguishing *Gulf Reston* and *Klingbeil* from the case at bar is that the incidents in both of those cases occurred in the tenant's own apartment. The instant case involves activities in common areas, a distinction recognized in *Gulf Reston*, above. In addition, the incidents in *Gulf Reston* and *Klingbeil* were relatively isolated and thus considered unforeseeable by the landlord. In the present case, the situation had become pervasive. Ms. Christian had lodged complaints with the landlord about it, and police visits to the premises were common. But most importantly, the instant case is distinguishable from *Gulf Reston* and *Klingbeil* in that those plaintiffs sought to impose liability upon the landlords for their damages arising out of specific criminal assaults upon their persons. Ms. Christian makes no such claim. Rather, she seeks to be released from her obligations under her lease with Nottingham because of the unsafe state into which the premises had deteriorated.

It is insufficient to address the question of what the landlord's duty was to protect Ms. Christian from specific criminal activities. Regardless of what that duty was and whether it was breached, the situation had escalated beyond isolated incidents into the realm of the general quality of life at the complex. Thus, the issue becomes whether the continued dangerous and distasteful conduct of third parties on the common areas of the leased premises amounts to a breach of the landlord's covenant of quiet enjoyment.

The lease contained a provision that "Lessor will deliver quiet possession of the premises." (Plaintiff's Exhibit 1.) This relates to the tenant's assumption of the tenancy without interference. But, in addition, there exists an implied covenant of quiet enjoyment during the lease term incident to the landlord-tenant relationship. *See e.g. Atlantic Richfield Co. v. Beasley*, 215 Va. 348, 350 (1974) (no dispute as to existence of covenant in landlord-tenant relationship). While Virginia recognizes the existence of the covenant, it is necessary to look to other jurisdictions to assist in interpreting its bounds.

To constitute a breach of the covenant of quiet enjoyment, the acts complained of need not have been performed by the landlord himself. Numerous cases have held the conduct of fellow tenants to constitute a constructive eviction amounting to a breach by the landlord. *See Colonial Court Apartments, Inc. v. Kern*, 163 N.W.2d 770 (Minn. 1968) (upstairs neighbors' noisy parties, running water in early morning hours and dishwasher at late hours, and insulting language was a constructive eviction of downstairs tenant); *Weiler v. Pancoast*, 58 A. 1084 (N.J. 1904) (constructive eviction found where fellow tenant used apartment for prostitution and landlord refused to interfere, rendering complaining tenant's apartment "unfit for occupancy by a respectable family"); *Gottdiener v. Mailhot*, 431 A.2d 851 (N.J. Super. Ct. App. Div. 1981) (interference with quiet enjoyment found by virtue of noise, slamming doors, television and radio after 10:00 p.m., and yelling children); *Bruckner v. Helfaer*, 222 N.W. 790 (Wisc. 1929) (music, dancing, drunkenness and foul language by adjoining tenant, for which landlord afforded no relief, constituted a constructive eviction which breached the landlord's covenant of quiet enjoyment).

In *Bocchini v. Gorn Management Co.*, 515 A.2d 1179 (Md. Ct. Spec. App. 1986), a Maryland court reversed the dismissal of a tenant's counterclaim for breach of the covenant of quiet enjoyment. The acts alleged to constitute the breach were performed by another tenant and her guest, and included "clomping on the floor from persons walking or running heavily, exercising taking place on the floor, a very loud alarm clock going off at approximately 5:00 a.m., and playing the stereo extremely loudly at late hours." *Id.* at 1181. In addition, the neighbor's guest had shouted obscenities and threatened the complainant. The court discussed the acts of a fellow tenant as a breach of the landlord's covenant, referring to the Restatement view. "[T]here is a breach of the landlord's obligations if, during the

period the tenant is entitled to possession of the leased property, the landlord, *or someone whose conduct is attributable to him*, interferes with a permissible use of the leased property by the tenant." *Id.* at 1184 (quoting Restatement (Second) of Property, Landlord and Tenant § 6.1 (1977)). The court also referred to comment d of section 6.1, which states that "the conduct of a third person outside of the leased property that is performed on property in which the landlord has an interest, which conduct could be legally controlled by him, is attributable to the landlord for the purposes of applying the rule of this section." *Id.*

"Legal control" in this context most commonly refers to a landlord's power to evict a fellow tenant. However, illustration 10 under the above comment is helpful to this analysis:

> L leases an apartment to T. L retains control over the halls and other common areas of the apartment building. Other tenants in the building and their guests use the common areas in a noisy, boisterous and disturbing manner. L fails to stop this conduct after being requested to do so by T on several occasions. The conduct of those third persons is attributable to L for the purposes of applying the rule of this section.

Restatement (Second) of Property, Landlord and Tenant § 6.1, cmt. d, illus. 10 (1977). The disturbing conduct attributable to the landlord under that illustration was performed by fellow tenants and their guests. Thus the landlord is said to be able to control the conduct of persons, namely, the tenant's guests, over whom he does not possess the power of eviction. Eviction, therefore, is not the only method of legal control to which the landlord may resort.

A landlord, as the lessor of private property, has the power to altogether exclude persons from his property who are not his tenants. A tenant has a legal right to be on the property, so removal must occur through proper eviction procedures. Non-tenants possess no such right to access, and therefore, a landlord has broader power to remove them. Once a landlord is on notice that persons with no right to be on the property are conducting themselves in a manner that substantially interferes with the safety of a tenant and her ability to enjoy her leased premises, his failure to take measures to exclude such persons constitutes a breach of his covenant of quiet enjoyment.

Nottingham knew of the repugnant activities occurring on this property. As the lessor of the premises, it retained control of com-

mon areas and had the authority to take steps to remove the offending persons from the property. It would insult the sensibilities of this court to allow a tenant to vacate an apartment because a fellow tenant threw loud parties, but to disallow a tenant from vacating when faced with verbal abuse, ongoing drug deals, and gunfire. The fact that a fellow tenant did not perform these acts is not dispositive. It is true that Nottingham would not have the power to control isolated acts of trespassers. However, the offending acts in this case were pervasive and ongoing. The common areas of the apartment complex had become a breeding ground for drug activities and armed conflict. Under such serious circumstances, this court finds that Ms. Christian was constructively evicted from her home, constituting a breach by Nottingham of its covenant of quiet enjoyment.

In light of the foregoing reasons, Nottingham is not entitled to the rent payments for the balance of Ms. Christian's lease term.