**In re Jerry L. LATHROP, Gloria J. Lathrop, Chapter 13 Debtors.**

**No. 99–30447–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 12, 2000.

Graham T. Jennings, Jr., Powhatan, VA, for debtors.

Nicole L. Fox, Marshall and Marshall, Richmond, Virginia, for EWN Development Co., Inc.

Gregg R. Nivala, Office of the U.S. Trustee, Richmond, Virginia, Assistant United States Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held May 23, 2000, on the debtors' objection to the proof of claim filed by EWN Development Co., Inc., and

on EWN's objection to confirmation of debtors' third modified chapter 13 plan. The dispute involves the amount of rent debtors owe EWN under their guaranty of a lease between EWN as lessor and debtors' corporate restaurant as lessee.

At the conclusion of the hearing, the court's ruling from the bench sustained the debtors' objection to the proof of claim filed by EWN, held the debtors were liable for rent only through February 28, 1998, and sustained EWN's objection to confirmation. This opinion supplements the court's bench ruling.

## Facts

Debtors were stockholders in Country Fixings, Inc., a Virginia corporation, which operated a restaurant known as Cajo's Place located in Powhatan County, Virginia. Debtor Jerry L. Lathrop was manager of the restaurant from its inception in 1994 until it was closed in January 1998.

The restaurant was operated in leased premises under a lease dated March 1, 1994, between Jon F. Sauer as lessor and Country Fixings as lessee. In February 1997, EWN became lessor. Pursuant to paragraph 2 of the lease, the lease term was to expire on February 18, 1999.

The leased building has a flat roof, composed of tar and gravel over a metal insulated frame. Beginning in February 1997, rain water began to leak through the roof to the inside of the restaurant. The leaking roof was a serious condition that persisted and became worse throughout the year 1997. In August, no less than ten places in the restaurant were leaking during rains. Water came through ceilings and even ran out of electrical outlets. As a consequence, it was necessary for restaurant personnel to place buckets to catch water and to close off parts of the restaurant which could not be used due to the falling water.

Paragraph 5 of the lease provided in part as follows:

Lessor agrees to maintain the ... roof and the exterior of the building of which the leased premises form a portion ... in substantially their present condition, ordinary wear and tear excepted....

During 1997 Jerry Lathrop and members of his staff made numerous telephone calls to the lessor's business office to report the problems with the leaking roof. In addition, no less than three letters were sent from the Lathrops or their attorney to EWN reporting "serious" water leakage. However, the only significant roof repair caused to be made by the lessor was in May 1997; at that time an employee of EWN (or an associated entity) performed repairs for which he charged EWN $1,200.00. These repairs gave only temporary relief, and the leaks were soon as bad as ever.

Attorney Graham Jennings, Jr., (counsel for Country Fixings, Inc. and debtors) sent a letter dated January 5, 1998, to EWN which asserted that EWN had breached the lease by refusing or failing to repair the roof despite notice and repeated reminders. The letter further states:

Country Fixings ... is proposing that the leasehold relationship be terminated as of February 28, 1998. Country Fixings and all personal guarantors will assume payment of rent through that date.

On January 16, 1998, an environmental health specialist of the Virginia Department of Health inspected Cajo's premises. His report included the following statement: "Roof leaks in many locations. Possible health hazard to patrons' food. Repair leak. Immediate."

The restaurant ceased operations at the end of January 1998. The building remained vacant through February 1999. Shortly thereafter the building was demolished.

Debtors filed this chapter 13 bankruptcy case on January 25, 1999. EWN filed a proof of claim as follows:

| | |
|---|---|
| Rent, February 1998 – February 1999 | $45,500.00 |
| Late fees pursuant to lease | 2,275.00 |
| Attorney fees pursuant to lease | 11,943.75 |
| Total | $59,718.75 |

Debtors filed an objection to EWN's proof of claim. EWN filed an objection to confirmation of the debtors' chapter 13 plan because it "significantly undervalues EWN's claim."

### Conclusions of Law

The issue before the court is whether the facts stated constitute a basis for relieving the debtors from the payment of rent not due when the premises were vacated. The court holds that the debtors are not liable to EWN for rents not due as of February 28, 1998.

### A. LIABILITY AFTER ABANDONMENT.

The court bases its holding that the debtors are not liable to EWN for periods after February 28, 1998, on two alternative legal theories: breach of contract and constructive eviction.

#### 1. Breach of Contract

■ The problems with the roof began about the same time that the lease was assigned to EWN. Debtors' evidence has overwhelmingly established that during periods of rainfall from February 1997 until at least January 16, 1998, there were serious and substantial roof leaks in the restaurant operated by debtors' corporation. In spite of numerous calls and letters to the lessor, who was obligated under the lease to maintain the roof, EWN made no serious effort to comply with the lease by making the necessary repairs the roof of the building. The leased premises became increasingly untenable as time progressed. In late January 1998, the lessee ceased operations and soon abandoned the building. The lessor allowed the building to lie vacant until the expiration date specified in the lease had passed, then demolished the building.

The court holds that EWN breached paragraph 5 of the lease due to its failure to maintain the roof. As a result of EWN's contract breach, the lessees were entitled to terminate the lease, and the lessee and debtor as guarantors are not responsible for rent not yet due at the time the premises were vacated.

#### 2. Constructive Eviction.

■ There is little case law in Virginia on the defense of constructive eviction. *See Wagner & Assoc., Inc. v. Am. Income Life Ins. Co., Inc.*, 29 Va.Cir. 161 (1992). The case of *Buchanan v. Orange*, 118 Va. 511, 88 S.E. 52 (1916) covers important principles on the subject which are still applicable today. *See id.* In *Buchanan*, the Supreme Court of Virginia stated:

> The law governing the rights and liabilities of landlord and tenant in cases where the tenant asserts eviction from the premises, is that actual expulsion is not necessary, but that any act of the landlord or of anyone who acts under his authority ... which so disturbs the tenant's enjoyment of the premises to render them unfit for occupancy *for the purposes for which they are leased, is an eviction, and whenever it takes place the tenant is released from the obligations under the lease to pay rent accruing thereafter.*

*Buchanan*, 118 Va. at 515, 88 S.E. 52 (quoting *Wade v. Herndl*, 127 Wis. 544, 107 N.W. 4 (1906)) (emphasis added). Included within the definition of constructive eviction is "any wrongful act of the landlord, either of commission or omission, which may result in a substantial interference with the tenant's possession or enjoyment, in whole or in part." *See Nottingham Assoc. v. Christian*, 29 Va.Cir. 175 (1992) (quoting *Buchanan*, 118 Va. at 515, 88 S.E. 52). "The action or inaction of the landlord need not make the premises wholly untenable for a tenant to be constructively evicted." *Id.*

The court holds that EWN's inaction with respect to the roof constituted a con-

structive eviction, which entitles the lessee and debtors as guarantors to a release from the payment of rent not yet due when the premises were vacated.

## B. ESTOPPEL.

■ The evidence before the court is inconclusive on when the premises were vacated. The letter dated January 5, 1998, sent by attorney Graham Jennings, Jr., to EWN proposed that the leasehold relationship be terminated as of February 28, 1998, and stated that the debtors would assume payment of rent through that date. Therefore, the debtors are estopped from arguing that the building was vacated before February 28, 1998. The debtors are liable for rent through February 28, 1998, but not thereafter.

An order consistent with this opinion will be entered.