CAVALIER SQUARE LIMITED PARTNERSHIP

v.

VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD,
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,
COMMONWEALTH OF VIRGINIA, ET AL.

Record No. 921698

September 17, 1993

Present: All the Justices

*Charles L. Williams (Perkins Wilson; Thompson & McMullan,* on briefs), for appellant.

*John N. McCarthy, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellees.

*Amicus Curiae:* International Council of Shopping Centers (Edward C. Maeder; Edward J. Sack; Winston & Strawn, on brief).

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, we determine whether the trial court erred in holding that a lessee was not liable for payment of rent on the ground that the lessor had constructively evicted the lessee from the demised premises.

Cavalier Square Limited Partnership (Plaintiff/Lessor) sued Virginia Alcoholic Beverage Control Board, Department of Alcoholic Beverage Control, Commonwealth of Virginia (the Board), and Edward J. Mazur, Comptroller, Commonwealth of Virginia, to recover damages for unpaid rent. The Board denied that it owed the rent. The Board asserted that the Plaintiff/Lessor "took action to interfere with and block" its right to sublease the demised premises, that such action constituted a constructive eviction, and that, therefore, it no longer was obligated to pay rent.

Following a bench trial in which all evidence was presented by stipulation of the parties, the trial court entered judgment in favor of the Board. In doing so, the court ruled that the Board and its assignee "were constructively evicted" from the premises and, therefore, were not liable for the payment of the rent in issue. The Plaintiff/Lessor appeals.

The parties' stipulation set forth the following facts. By agreement dated October 30, 1980, the Board, as lessee, and J.Y. Plotkin

and others, partners trading as Cavalier Square Shopping Center (Cavalier Square Associates), as lessor, entered into a lease for space at the Cavalier Square Shopping Center (Cavalier Square). The lease provides for a 16-year term, commencing February 1, 1981, and ending January 31, 1997, and for the payment of rent in the amount of $1,620.83 per month.

In August 1990, the Board decided to close its store in Cavalier Square and to open a new store in The Crossings Shopping Center (The Crossings). Consequently, the Board entered into a lease agreement and an assignment agreement with The Crossings Associates Limited Partnership (Crossings Associates). Pursuant to the terms of the assignment agreement, the Board assigned to Crossings Associates the Board's Cavalier Square lease, and Crossings Associates agreed to assume all obligations of that lease, including payment of rent. About November 30, 1990, the Board relocated its store to The Crossings, and Crossings Associates paid the rent due under the Cavalier Square lease for the months of December 1990 and January and February 1991.

When Cavalier Square Associates became aware of the assignment, an exchange of correspondence followed. The first letter, dated January 31, 1991, was written by Cavalier Square Associates' counsel and was addressed to the Board, Crossings Associates, and Disabled American Veterans. The letter, in pertinent part, stated as follows:

We have been advised that the Virginia Alcoholic Beverage Control Commission ("ABC") has vacated Cavalier Square and has obtained new space in the Crossings Shopping Center. We have also been advised that ABC purports to have assigned its interest in its lease of the Cavalier Square space, dated October 30, 1980 (the "Lease"), to Crossings Associates Limited Partnership ("Crossings L.P.") pursuant to an Assignment of Lease Agreement dated November 16, 1990. Finally, we are advised that Crossings L.P. may have further assigned the Lease or sublet ABC's space in Cavalier Square to Disabled American Veterans ("DAV").

This letter is to advise ABC that it is in breach of the Lease as a result of its vacation of the premises in Cavalier Square and its purported assignment of the Lease to Crossings L.P. Cavalier Associates further advises Crossings L.P. and DAV

that neither entity has any interest in the Lease or in ABC's space in Cavalier Square and that both Crossings L.P. and DAV should immediately cease and desist entering upon the Cavalier Square space leased to ABC for purposes of preparing the space for a new tenant or for any other purpose arising out of any purported assignment of the Lease. If necessary, Cavalier Associates is prepared to institute legal proceedings to prevent further unauthorized activities on the Cavalier Square premises leased to ABC and to recover any damages incurred by Cavalier Associates as a result of such activities.*

On February 14, 1991, counsel for Cavalier Square Associates wrote a second letter addressed to Crossings Associates, which Crossing Associates transmitted by facsimile machine to the Board. In this letter, Cavalier Square Associates claimed that it had exclusive authority to lease its shopping center premises and denied that Crossings Associates had ''any interest in any space at Cavalier Square.'' Cavalier Square Associates further stated that it viewed ''the purported assignment of the . . . Board's space to Crossings [Associates] as having no validity and vesting no rights in Crossings [Associates].''

On March 5, 1991, an Assistant Attorney General, on behalf of the Board, wrote a letter to Cavalier Square Associates' counsel. The Assistant Attorney General opined that the Board had the authority to vacate the premises and to assign the Cavalier Square lease. He stated that Cavalier Square Associates, by the position it had taken, had ''breached its express written covenant with the Board of quiet possession and enjoyment of the premises, as contained in [the Cavalier Square lease].'' Finally, the Assistant Attorney General called upon Cavalier Square Associates to set forth the legal basis for its denial of the Board's right to assign the Cavalier Square lease and stated that, unless Cavalier Square Associates changed its position by March 20, 1991, there would be an ''abrupt halt to all future rent payments.'' On March 20, 1991, however, Cavalier Square Associates' attorney wrote to the Assistant Attorney General, stating that Cavalier Square Associates was ''firm in its position'' that the assignment of the lease was ''ineffective and constitute[d] a breach of the Lease Agreement.''

---

* Plaintiff/Lessor conceded at trial that Disabled American Veterans acted independently of this correspondence when it declined to lease the premises.

In April 1991, the Plaintiff/Lessor purchased Cavalier Square at a foreclosure sale and became the successor-in-interest to the rights of Cavalier Square Associates under the lease. Following the purchase, the Plaintiff/Lessor advised the Board that it did not intend to contest the assignment to Crossings Associates but did intend to enforce the Board's obligation to pay rent as required by the lease. The Board refused to pay further rent, taking the position that it had been constructively evicted from the demised premises.

Crossings Associates retained possession of keys to the demised premises until mid-September 1991, at which time the keys were delivered to Plaintiff/Lessor. According to Plaintiff/Lessor, it accepted the keys for "safekeeping purposes." Plaintiff/Lessor has not re-entered the premises, and signs posted by the Board remain displayed in the premises.

■ It is well established that an assignment of a lease does not relieve the lessee of liability under the lease even when the lessor consents to the assignment. *Jones* v. *Dokos Enterprises*, 233 Va. 555, 557, 357 S.E.2d 203, 205 (1987). The Board admits the existence of the lease and that neither it nor Crossings Associates has paid rent since February 1991. The Board asserts as an affirmative defense, however, that threats of litigation made in letters written by Cavalier Square Associates' counsel constituted a constructive eviction of the Board and its assignee, thereby relieving the Board of the obligation to pay further rent. We do not agree.

■ Ordinarily, to constitute a constructive eviction, there must be a complete abandonment by the lessee, or its assignee, of the demised premises within a reasonable time after intentional conduct by the lessor permanently deprives the lessee, or its assignee, of the beneficial enjoyment of the premises. *Westland Housing Corp.* v. *Scott*, 44 N.E.2d 959, 962-63 (Mass. 1942); *Cato* v. *Silling*, 73 S.E.2d 731, 744 (W.Va. 1952), *cert. denied*, 348 U.S. 981 (1955). Additionally, the burden of proving a constructive eviction, as with any affirmative defense, rests upon the party asserting it. *See Smith* v. *Woodlawn Construction Co.*, 235 Va. 424, 430, 368 S.E.2d 699, 703 (1988). Although we previously have not addressed the issue, other courts have held that a threat by a lessor to resort to legal process, when made in good faith, is not such intentional conduct that would support a finding of a constructive eviction. *See, e.g., Lindenberg* v. *MacDonald*, 214 P.2d 5, 9 (Cal. 1950); *Gibson* v. *Thisius*, 134 P.2d 713, 714 (Wash. 1943). We adopt this rule.

■ Generally, a trial court's factual findings after an *ore tenus* hearing will not be disturbed on appeal unless they are plainly wrong or unsupported by the evidence. Where, as here, the court's findings are based upon undisputed evidence, however, such findings do not have the same binding weight on appeal. *Schweider* v. *Schweider*, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992).

■ In the present case, the Board neither alleged nor presented proof that Cavalier Square Associates' counsel acted in bad faith when he threatened resort to legal process, and the trial court made no such finding. Nothing in the record supports a finding that Plaintiff/Lessor permanently deprived the Board or Crossings Associates of the beneficial enjoyment of the premises. Furthermore, neither the Board nor Crossings Associates completely abandoned the premises within a reasonable time after the receipt of the letters in question. Indeed, it is undisputed that Crossings Associates did not surrender possession of the keys to the premises until mid-September 1991. The Plaintiff/Lessor accepted the keys only for safekeeping and did not repossess the premises. Moreover, the Board's signs remained posted in the premises.

■ We hold, therefore, that the evidence, even when viewed in the light most favorable to the Board, fails to support a finding of a constructive eviction. Accordingly, the trial court's judgment will be reversed and the case will be remanded for the entry of a judgment consistent with this opinion.

*Reversed and remanded.*