Present:   All the Justices

NORTH RIDGE APARTMENTS

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.   Record No. 981100                    April 16, 1999

ALICE RUFFIN


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
T. J. Markow, Judge

The question presented in this unlawful detainer action is whether the trial court erred in finding that the lessee had been constructively evicted from the demised premises.

Appellant C. G. II L.C., trading as North Ridge Apartments, the lessor, filed this action against appellee Alice Ruffin, the lessee, seeking judgment for possession of the leased premises, for unpaid rent, and for damages arising from a written lease between the parties.  Following a bench trial, the court entered judgment in favor of the lessee.  The lessor appeals.

The facts are undisputed and are set forth in a Rule 5:11 written statement.  The lessee entered into an "Apartment Lease" with the lessor for a term beginning August 1, 1996 and ending July 31, 1997 for designated premises in the City of Richmond. The lessee failed to pay rent for June 1997 and this action was filed.

At trial, the court heard testimony from the lessee and a representative of the lessor.  The lessee testified "she desired to terminate her lease . . . due to her fear of crime and

because she did not feel safe in the premises." She stated that, during the tenancy, "she became aware of drug sales and criminal activity in and around the apartment building." She said her "car was vandalized and broken into while parked on plaintiff's premises provided for tenant parking."

In addition, she testified that "[o]ther tenants were unruly and threatening, and left trash in hallways which were common areas" of the three-floor, six-apartment building. Also, she said "[d]og litter was . . . found in the hallways." She complained that "[o]ther tenants regularly propped open the [building's] security door, allowing unauthorized persons into the common hallways."

The lessee further testified that she had made verbal complaints to the lessor about the conditions. She admitted, however, that she had not put those complaints in writing as required by the apartment rules and regulations that were incorporated in her lease. She said "she was fearful that written complaints would result in retaliation from the offending tenants."

The lessor's rental manager testified that each time the tenant made verbal complaints, "she or her staff acted to address and rectify the situations." Stating she was aware of the security doors being propped open, the manager said that apartment staff closed the doors when they found them open.

Also, she said that notices were sent to residents who left the doors open, advising them of the necessity to leave the doors closed and locked.

The manager also testified that the lessor employed security patrols, which "came to the premises at random times and walked and drove through the grounds. They specifically looked for open front doors and would close those doors when and if they were discovered open."

In ruling for the lessee Ruffin, the trial court stated "it appeared that plaintiff had responded to Ruffin's complaints; however, due to the criminal activity on the grounds and Ruffin's fear of retaliation, Ruffin was constructively evicted." This ruling was erroneous.

Ordinarily, to constitute constructive eviction there must be intentional conduct by the lessor that permanently deprives the lessee of the beneficial enjoyment of the demised premises, and the lessee must completely abandon the premises within a reasonable time after the lessor's conduct. Cavalier Square Ltd. Partnership v. Virginia ABC Board, 246 Va. 227, 231, 435 S.E.2d 392, 395 (1993). The burden of proving the affirmative defense of constructive eviction rests upon the lessee. Id.

The evidence in the present case fails to support a finding that the lessor was guilty of any intentional conduct that permanently deprived the lessee of the beneficial enjoyment of

the leased premises.  Generally, a lessor has no common-law duty to protect the lessee from a criminal act by an unknown third party.  Klingbeil Management Group Co. v. Vito, 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987); Gulf Reston, Inc. v. Rogers, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974).

And the record fails to show that the lessee claimed, or that the trial court ruled, there was a statutory duty upon the lessor regarding third-party acts under these circumstances. Thus, we do not consider whether the provisions of the Virginia Residential Landlord and Tenant Act, Code §§ 55-248.2 to -248.40, require the lessor to protect the lessee from foreseeable criminal acts.

Therefore, because there was no duty on the lessor in this case to control third parties' criminal conduct, the failure of the lessor to protect the lessee from such conduct cannot be deemed an intentional act of omission.

In addition, the lessee's evidence regarding the non-criminal acts suffers from the same deficiency on the issue of intentional conduct as her other evidence.  The record shows that the lessee's complaints about unruly tenants, trash in the hallways, and open security doors all were promptly addressed by the lessor.  Indeed, the trial court said "it appeared that plaintiff had responded to Ruffin's complaints."

Consequently, because the trial court erred in holding that the lessee had been constructively evicted, we will reverse the judgment below and enter final judgment here in favor of the lessor.

<u>Reversed and final judgment</u>.