**CIRCUIT COURT OF FAIRFAX COUNTY**

Neurology Services, Inc., et al.

v.

Fairfax Medical PWH, L.L.C., et al.

January 3, 2005

Case No. (Law) 220451

BY JUDGE JONATHAN C. THACHER

This matter came before this Court on the Defendant's Demurrers to the Motion for Judgment on August 27, 2004. At that time, the Court took the matter under advisement. After reviewing the pleadings and considering counsels' arguments, the Court reaches the findings and conclusions stated below.

*Factual and Procedural Background*

Plaintiffs in this case, Neurology Services, Inc. ("NSI"), as well as NSI's owner, Peter G. Bernad, M.D., and NSI's practice manager Tom Wasserman (hereinafter jointly referred to as "the Plaintiffs"), filed this suit in February

2004. The Defendants in this action, Fairfax Medical PWH, L.L.C., and Fairfax Medical DH, L.L.C. (hereinafter jointly referred to as "Fairfax Medical"), as well as Fairfax Medical's property manager, Ira J. Hersh, filed and argued the following Demurrers to the Plaintiff's Motion for Judgment.

On October 18, 2000, NSI and Fairfax Medical entered into a lease for commercial office space ("the Suite") located in a medical building known as the Fairfax Medical Center ("the Center"). The lease, drafted by Fairfax Medical, was for a term of three years, running from November 1, 2000, to October 31, 2003. Hersh is employed by Fairfax Medical as the building manager.

From November 1, 2000, to July of 2003, NSI used the leased office space for its medical practice, which specialized in the fields of neurology, otolaryngology, sleep medicine, and insomnia research. Defendants were aware of the medical uses of the Suite.

During their tenancy of the Suite, Plaintiffs made Defendants aware that the materials used to construct the Suite contained asbestos, a condition that required special handling during any kind of repairs or reconstruction, and that medical problems had been associated with asbestos contamination. Plaintiffs also instructed the Defendants not to perform any construction or repairs on the suite that would disturb the asbestos and result in further asbestos contamination.

On or about June 2, 2003, a number of construction workers and Hersh entered the Suite to conduct construction work, but did not disclose the nature of the construction work. The Plaintiffs told Hersh to abstain from beginning any construction in the Suite. The Plaintiffs and NSI further allege that they had communicated on several occasions to the Defendants that there was asbestos within the Center and that disturbing the asbestos by any sort of construction would be lead to contamination of the Suite and subsequent medical problems routinely associated with asbestos contamination. The Plaintiffs informed Hersh that Bernad and Wasserman would be out of town for the rest of the week.

While Bernad and Wasserman were out of the country, Hersh and the construction workers again entered the Suite. On or about June 4, 5, and 6, contractors employed by Hersh and Fairfax Medical cut approximately seven two-foot by two-foot manholes in the ceilings of Suite 200. Before conducting this construction work, the Defendants failed to survey the Suite for any asbestos or establish any protocol for dealing with the possibility of asbestos contamination.

Because of the construction work, the Suite became contaminated with asbestos dust. Plaintiffs were not informed of the construction work done on

the Suite, nor did Hersh or Fairfax Medical file a proper Notification of Intent to Renovate/Demolish with the Environmental Protection Agency or the Commonwealth of Virginia. The contractors were not informed of the asbestos issue.

Upon their return, without any knowledge of the construction, Bernad and Wasserman entered the Suite, exposing themselves to the asbestos dust. They subsequently learned of the construction and had the Suite tested for asbestos. The test results confirmed the existence of asbestos dust in the range of two to twenty-five percent. Acceptable limits set by the Environmental Protection Agency is one percent. The company that performed the tests also informed Bernad and Wasserman that they should immediately close the office because of the resulting asbestos contamination.

Defendants conducted their own asbestos testing on June 19, 2003, which confirmed the existence of asbestos in the Suite. Defendants hired a decontamination team on or about June 27, 2003, to clean the suite. While the decontamination team was there, the team tore out the ceiling in the areas where the manholes were cut, leaving exposed light fixtures, destroyed the carpeting in one of the waiting areas, gutted one entire office, overturned office furniture, and left trash and debris throughout the Suite. During mid-to-late June, employees of the Plaintiffs, including Wasserman and Bernad, presented with allergy-related symptoms resulting from the asbestos dust, ranging from sneezing, coughing, and severe headaches. As a result of the asbestos contamination, Plaintiffs were forced to abandon the premises at the end of June 2003.

After Bernad and Wasserman abandoned the contaminated Suite, Defendants confiscated their property, the remaining medical equipment and furniture, and attempted to sell the property to another tenant. On August 11, 2003, the Department of Labor and Industry of the Commonwealth of Virginia issued a report that concluded there was an asbestos exposure hazard at the suite and recommended that citations be issued. Plaintiffs relocated their business to an office space in Alexandria, Virginia. The Plaintiffs brought a Motion for Judgment against both Hersh and Fairfax Medical, seeking both compensatory and punitive damages. Counts included are:

Count I: Breach of Contract; NSI against Fairfax Medical for $1,000,000 in compensatory and $10,000,000 in punitive damages;

Count II: Constructive Eviction; NSI against Fairfax Medical and Hersh for $1,000,000 in compensatory and $10,000,000 in punitive damages;

Count III: Intentional Interference with Contract; NSI against Hersh for $1,000,000 in compensatory and $10,000,000 in punitive damages;

Count IV: Conversion; NSI against Fairfax Medical and Hersh for $100,000 in compensatory and $1,000,000 in punitive damages;

Count V: Willful Destruction of Property; NSI against Fairfax Medical and Hersh for $1,000,000 in compensatory and $10,000,000 in punitive damages;

Count VI: Trespass; NSI against Fairfax Medical and Hersh for $1,000,000 in compensatory and $10,000,000 in punitive damages;

Count VII: Battery; the Plaintiffs against Fairfax Medical and Hersh for $100,000 in compensatory and $1,000,000 in punitive damages.

On March 19, 2004, Hersh filed a Demurrer to Counts II through VII. On that same date, Hersh also filed a Motion Craving Oyer, seeking a copy of the lease. This motion was granted. On April 19, 2004, Fairfax Medical filed a Demurrer to all seven counts, as well as a Demurrer to any punitive damages sought.

*Standard of Review*

"A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993). "When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 279 (*citing Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918)). "Virginia is a notice pleading state." *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 279. "Even when a motion for judgment may be flawed, the trial court should overrule the demurrer, provided that it has been drafted so that defendant cannot mistake the true nature of the claim." *Id.* (*citing Alexander v. Kuykendall*, 192 Va. 8, 14-15, 63 S.E.2d 746, 749-50 (1951)).

This Demurrer standard will apply to all counts.

*Count I: Breach of Contract against Fairfax Medical PWH, L.L.C., and Fairfax Medical DH, L.L.C.*

Defendant Fairfax Medical's Demurrer states that Plaintiffs have failed to state a valid cause of action for Breach of Contract because they failed to allege any conduct that actually violated the lease contract. Fairfax Medical

points to the lease Paragraph 20(a) at page 13, stating that the express lease provision that allows the Lessor to "at all reasonable times, during business hours, by itself or its duly authorized agents to go upon and inspect the Unit and every part thereof without prior notice and at its option to make repairs, alterations, and additions to the Unit." Defendant argues that its only obligation to the Lessee was to undertake the construction at a "reasonable time, during business hours." Defendants claim that they have done nothing to violate the contract between the parties.

Plaintiffs respond that Fairfax Medical's argument that the breach of contract claim is barred by the terms of the lease ignores the accepted legal principle that a party to a contract cannot disclaim liability for intentional or reckless conduct. NSI contends that Fairfax Medical was on notice that there was asbestos in the premises and that Fairfax Medical was instructed not to perform any construction on the site that would disturb the asbestos.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (*citing Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996)).

Each party cites several clauses in the lease in support of their respective arguments. When examining clauses contained within a lease drafted by the lessor, Fairfax Medical, this Court must view any ambiguities in favor of the lessee, NSI, as the lessor, in drafting the lease, had the opportunity to resolve any ambiguities while crafting the lease. *See Monterey Corp. v. Hunt*, 216 Va. 843, 845, 224 S.E.2d 142, 144 (1976). When a written instrument is capable of more than one construction the courts will give to it the construction which the parties themselves have placed upon it. *Parrish v. Robertson*, 195 Va. 794, 801, 80 S.E.2d 407 (1954).

It is undisputed that the first element of the claim has been sufficiently pleaded. Each side admits that the lease is a legally enforceable instrument creating obligations on the part of both parties, and each relies upon the terms of that lease.

The central issue is whether the construction performed in the Suite constitutes a breach of the terms of the lease. The pertinent clauses in the lease are Paragraph 20(a) and Paragraph 13. Paragraph 20(a) states that Fairfax Medical or its agent may enter the Suite unannounced and perform repairs, alterations, or additions. The only limitation placed on this right is that these actions must take place at a reasonable time, during business hours. Paragraph

13 grants Plaintiffs the right of quiet enjoyment free from "hindrance or molestation" by Fairfax Medical or its agents.

Plaintiffs allege that Fairfax Medical was aware of several facts before beginning construction on the Suite, specifically that there was asbestos within the suite, that performing construction would disturb the asbestos creating a health hazard and contaminating the suite, and that the Bernad and Wasserman would be out of town during June 4, 5, and 6. Plaintiffs assert that all of these facts support the conclusion that the construction work was done at an unreasonable time and disrupted their quiet enjoyment of the premises, in violation of Paragraphs 20(a) and 13 respectively. Additionally, Plaintiffs contend that there were no precautions taken or abatement procedures enacted to deal with the asbestos and that this omission shows that the timing of the construction was inherently unreasonable. Plaintiffs have sufficiently pleaded material facts that support the second element of a breach claim.

Plaintiffs allege that damages in the form of lost patients, lost grants, lost equipment, cost of relocation, and other losses were directly caused by the breach of contract that left the Suite uninhabitable. Therefore, Plaintiffs have sufficiently pleaded material facts that, when viewed in the light most favorable to the Plaintiffs, state a valid cause of action for breach of contract and Fairfax Medical has notice of the nature and character of the claim. The Demurrer to Count I of the Motion for Judgment is overruled.

### Count II: Constructive Eviction against Fairfax Medical and Hersh

#### A. Claim against Hersh

Before analyzing the sufficiency of the pleadings in respect to a claim of constructive eviction, it must be determined whether a constructive eviction claim will lie against the Defendant Hersh. Fairfax Medical is the admitted landlord of the property, as established in the lease; Hersh is the property manager, an agent of the landlord. While his actions may have been integral in creating this controversy, the Virginia Supreme Court has long held that a constructive eviction action will lie only against the lessor of the premises from which the lessee was evicted. *Buchanan v. Orange*, 118 Va. 511, 88 S.E. 52 (1916). A reading of the facts as pleaded by NSI establish that Hersh was acting in his capacity as an agent of Fairfax Medical. The Demurrer on Count II as it pertains to the Defendant Hersh is sustained.

## B. Claim against Fairfax Medical

All five elements of constructive eviction must be sufficiently pleaded in order to maintain a cause of action: (1) a defective condition existed on the demised premises, (2) the defective condition was the responsibility of the landlord to repair, (3) the condition required under the lease was breached by the landlord, (4) the tenant gave notice of this breach to the landlord, and (5) the tenant vacated within a reasonable timeframe. *Buchanan v. Orange*, 118 Va. 511, 512, 88 S.E. 52, 53 (1916).

Ordinarily, to constitute a constructive eviction, there must be a complete abandonment by the lessee, or its assignee, of the demised premises within a reasonable time after intentional conduct by the lessor permanently deprives the lessee, or its assignee, of the beneficial enjoyment of the premises. *Cavalier Square, L.L.P. v. Virginia Alcoholic Beverage Control Bd.*, 246 Va. 227, 231, 435 S.E.2d 392, 395 (1993) (*citing Westland Housing Corp. v. Scott*, 312 Mass. 375, 44 N.E.2d 959, 962-63 (1942); *Cato v. Silling*, 137 W. Va. 694, 73 S.E.2d 731, 744 (1952), cert. denied, 348 U.S. 981, 99 L. Ed. 764, 75 S. Ct. 572 (1955)). Additionally, the burden of proving a constructive eviction, as with any affirmative defense, rests upon the party asserting it. *Cavalier* at 231.

NSI alleges the following material facts: on or about June 6th, Fairfax Medical made the Suite uninhabitable by creating a dangerous situation in the form of an asbestos contamination; NSI notified Fairfax Medical of the problem on June 13th; Fairfax Medical attempted to "clean up" the contamination; while decontaminating the Suite, the "clean-up crew" further damaged the Suite, which remained in an uninhabitable state as of June 27th; Plaintiffs NSI vacated the premises on June 30th.

It is undisputed that a defective condition existed in the form of an asbestos contamination and the state in which the clean-up crew left the Suite. It is undisputed that it was the responsibility of Fairfax Medical to remedy the defective condition of the Suite. As noted above, this Court has found that material facts have been sufficiently pleaded to support a claim of breach by Fairfax Medical. Plaintiffs assert that Fairfax Medical was made aware of the breach when they were notified about the asbestos test results. Finally, NSI declares the premises were vacated on June 30th, approximately two weeks after the initial asbestos testing. Under the Demurrer standard, with all facts pleaded accepted as true, this constitutes a reasonable time frame to vacate the premises.

Fairfax Medical's Demurrer, and defense to these pleadings, relies on Paragraph 15(a) to say that periods of untenantability were in the

contemplation of the parties at the time of contract formation. Fairfax Medical also asserts that NSI was not entitled to terminate the lease unless the premises were "substantially or totally destroyed . . . as to be entirely untenantable and it shall require more than ninety days (90) days to commence restoration of the same." Defendants allege the clean-up/restoration began twenty-five days after the contamination occurred on June 2, 2003, well within the timeframe contemplated in the lease of ninety days. Fairfax Medical argues that the parties came to an express agreement in the lease, that NSI has expressly waived any remedies for untenantability, and that NSI is now seeking a remedy that it is not otherwise entitled to.

A thorough reading of Paragraph 15(a) refers to untenantability resulting from "fire or other casualty." Plaintiff NSI has not pleaded constructive eviction or damage to the premises through fire or "other casualty." NSI has pleaded that Fairfax Medical acted "in wanton and reckless disregard of the rights of Plaintiff NSI and the health and safety of the employees and patients of NSI and in flagrant violation of federal and state law regulating the renovation of buildings containing asbestos." MFJ, ¶ 40.

Paragraph 15(a) also contains a general release of landlord for an injury, inconvenience, or annoyance to tenant's business, arising from the necessity to make repairs. However, the necessity, or more generally the purpose, of the construction has not even been pleaded by the Defendants. The only "repairs" attempted by Fairfax Medical is the entry of the "clean-up crew" that further rendered the premises unusable for the purposes contemplated by both parties at the time the lease was signed. Fairfax Medical has attempted in its Demurrer, to style Paragraph 15(a) of the lease as a type of "exclusionary clause," stating that Plaintiffs had already expressly waived any constructive eviction claim it may have had by the terms of Paragraph 15(a).

As Fairfax Medical noted in its reply brief, "where parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them." *Charles E. Russell Co. v. Carroll*, 194 Va. 699, 703, 74 S.E.2d 685 (1953). NSI is clear in its argument that nowhere in the lease did NSI exempt Fairfax Medical for damage resulting in asbestos contamination. In fact, NSI emphatically reiterates in its Motion for Judgment and in its reply brief to Defendant's Demurrer that Fairfax Medical acted with reckless disregard for the wishes and rights of NSI and its business. NSI has pleaded that, through its own actions, Fairfax Medical rendered the premises unfit for use as a medical facility.

"Any act of the landlord or of anyone who acts under his authority . . . which so disturbs the tenant's enjoyment of the premises as to render them

unfit for occupancy for the purposes for which they are leased, is an eviction, and, whenever it takes place, the tenant is released from the obligations under the lease to pay rent." *Nottingham Assocs. v. Christian*, 29 Va. Cir. 175, 176 (Richmond 1992) (*quoting Buchanan v. Orange*, 118 Va. 511, 88 S.E. 52, 53 (1916)). This Court finds that NSI has sufficiently pleaded material facts that support a valid cause of action for constructive eviction and that NSI did not waive any such claim by clear and unambiguous language in its lease and overrules Defendant's Demurrer to Count II as it pertains to Fairfax Medical.

### Count III: Intentional Interference with Contract against Hersh

Plaintiffs plead in Paragraphs 41 through 46 of Count III in its Motion for Judgment that Defendant Hersh intentionally interfered with the contract between itself and Defendants Fairfax Medical. While Intentional Interference With a Contract is not a cause of action in this Commonwealth, Virginia case law does recognize the tort action of Tortious Interference with Contract Expectancy:

> we recently considered a tortious interference with contract cause of action in *Chaves v. Johnson*, 230 Va. 112, 335· S.E.2d 97 (1985), and set out the elements which a plaintiff must prove in order to establish a prima facie case. These elements are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Century-21 v. Elder*, 239 Va. 637, 641, 391 S.E.2d 296 (1990).

Plaintiffs have pleaded that Hersh was acting without his employer Fairfax Medical's direction and outside the scope of his employment when he led the construction team into the Suite and caused the asbestos contamination that led to the breach of the contract. Plaintiffs' pleadings have fulfilled three parts of the established four-part test reiterated by the Supreme Court of Virginia in *Century 21*; specifically that there was a valid contractual or business expectancy, that Hersh had knowledge of this relationship or expectancy, and that Plaintiffs suffered damages in the form of asbestos contamination, which Plaintiffs claim is a breach of contract in Count I above.

Plaintiffs have not pleaded any facts, however, that would support the intent prong of the four-part test. Plaintiffs have not pleaded, nor indeed is there any indication anywhere, that Hersh and the construction crew entered the premises with the intent to interfere with the contractual relationship between NSI and Fairfax Medical. While Hersh's actions may have been intentional, that is to say, he meant to enter the premises to perform the work therein, there is no indication that he did so with the intent to disrupt the contractual relationship, and this is the requirement of the third part of the test. Accordingly the Court sustains Defendant Hersh's Demurrer to Count III.

*Count IV: Conversion against Fairfax Medical and Hersh*

Plaintiffs contend that, after they were forced to vacate the property due to the asbestos contamination, Fairfax Medical reentered the property, claimed that the medical equipment and office furniture still on the premises was "abandoned," and Hersh attempted to sell it to another tenant in the building. Plaintiffs have also pleaded that "Defendants have exercised control and dominion, to the exclusion of Plaintiff NSI, and has unlawfully retained and converted to their own use, the medical equipment and office furniture owned by Plaintiff NSI." MFJ, ¶ 49. Defendant Fairfax Medical claims that Plaintiffs abandoned the equipment when they abandoned the premises; therefore, Fairfax Medical could not exercise dominion in violation of Plaintiffs' property interest.

Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights. *Virginia Podiatry Residency Found. v. Hurst*, 61 Va. Cir. 324, 326 (Fairfax 2003) (*citing Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956)). Any act of dominion wrongfully exerted over property in denial of or inconsistent with the owner's rights amounts to conversion. *Id.* In other words, conversion occurs when a person exercises control over another's property without authorization from the rightful owner to do so. *Id.*

Plaintiffs have pleaded that they had an ownership interest and property rights in the medical equipment and officer furniture in the Suite, which they were forced to abandon due to asbestos contamination, and that Fairfax Medical has retained possession of that property, to the exclusion of NSI. In its Demurrer, Fairfax Medical claims that the premises were "abandoned" and that Plaintiff NSI never requested the return of the property. There is no indication in the pleadings that Plaintiffs intended to relinquish ownership rights to the property. In fact, Plaintiffs have pleaded that Fairfax Medical has

retained the property to the exclusion of NSI and that it had a valid ownership interest and property rights in the equipment and furniture in the Suite. Whether or not the property was abandoned, to whom it belonged, and whether Plaintiffs had to request the return of the property within a certain period of time all remain facts to be determined at a later time. For the purposes of this Demurrer, Plaintiffs have pleaded the elements required to establish conversion. The Court overrules the Defendant's Demurrer on Count IV.

### Count V: Willful Destruction of Property against Fairfax Medical and Hersh

Plaintiff NSI has pleaded a count of Willful Destruction of Property, and, in response to the Defendant's Demurrer, in which Defendants contend that such a cause of action does not exist in Virginia, Plaintiffs respond that at least one court, the Eastern District of Virginia Federal Court, likens this action to a Trespass to Chattels. Trespass to Chattels is a tort recognized in Virginia, but NSI has not pleaded that cause of action. In addition, Fairfax Medical asserts that the terms of the lease itself waive any claims to property damage. The Court sustains the Demurrer as to Count V, without ruling on the lease argument, and grants Plaintiff NSI leave to amend its pleadings.

### Count VI: Trespass against Fairfax Medical and Hersh

Plaintiffs claim that Hersh and Fairfax Medical committed a trespass when they entered the Suite in spite of Bernad and Wasserman's directions not to enter the Suite to perform construction work that would disturb the asbestos. Fairfax Medical contends that it had an absolute right to enter the premises under the lease, stating that the lease specifically gave them the right to enter the property to perform "repairs, alterations, and additions."

A lessee of real property is entitled to the exclusive use of the demised premises for any purpose not prohibited by the lease. *Stonegap Colliery Co. v. Kelly & Vicars*, 115 Va. 390, 393, 79 S.E. 341, 342 (1913). Tenants maintain the right of possession of the demised premises for the entire term of the lease. *Johnson v. Marcel*, 251 Va. 58, 60, 465 S.E.2d 815, 817 (1996) (*citing Hannan v. Dusch*, 154 Va. 356, 360, 153 S.E. 824, 825 (1930)). Therefore, a lessor has no right to enter the premises without the tenants' consent. *Id.*

The *Johnson* case is informative here; in that case, the Supreme Court of Virginia found that, although a landlord owns a property, without the consent of the tenant, he has no right to enter. At issue here is whether or not the lease

gave the consent required for the landlord, Fairfax Medical, to enter the property. NSI has pleaded that Fairfax Medical entered the Suite and caused the asbestos contamination that effectively shut down its business. NSI did not plead that Fairfax Medical entered the premises to perform "repairs, alterations, and additions." In addition, this claim is also dependent upon what is considered "reasonable." NSI contends that not only was there a lack of consent for the construction work, but that Plaintiffs expressly asked Hersh not to conduct any construction. NSI also alleges that section 20(a) is inapplicable to the situation, as the construction was not done during regular business hours, the Plaintiffs were out of town, and the likelihood of asbestos contamination was extremely high, making the timing unreasonable, and Hersh's entrance into the Suite a trespass. Assuming these facts to be true, Plaintiffs have sufficiently pleaded a cause of action for trespass, and the Demurrer to Count VI is overruled.

*Count VII: Battery against Fairfax Medical and Hersh*

Plaintiffs NSI, Bernad, and Wasserman allege that Fairfax Medical committed the intentional tort of Battery when Bernad and Wasserman suffered various physiological reactions to the asbestos contamination in the Suite. Fairfax Medical contends that there was no "touching" of the Plaintiffs in this case. Plaintiffs have alleged, however, that the asbestos particles released when Defendants performed the construction in the Suite, and which caused extensive asbestos contamination, were inhaled by both Bernad and Wasserman. There is no dispute that Bernad and Wasserman were unknowingly exposed to, and contacted, asbestos fibers when they entered the Suite after the construction.

The tort of battery is an unwanted touching which is neither consented to, excused, nor justified. *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003) (*citing Washburn v. Klara*, 263 Va. 586, 561 S.E.2d 682 (2002); *Woodbury v. Courtney*, 239 Va. 651, 391 S.E.2d 293 (1990)). In addition, battery is an intentional tort.

Plaintiffs allege that "Defendants caused an offensive touching" through the construction and creation of a hazardous environment, to which Plaintiffs were subsequently exposed. Plaintiffs warned Fairfax Medical of the presence of asbestos, a known health hazard, and the health hazard posed by the construction. Defendants continued on course of action with knowledge of the probable consequences. While the Defendants may have sent the asbestos fibers into the air, the Court finds no "intent" to "cause an offensive touching. The Defendant's Demurrer to Count VII is sustained.

## Misjoinder of Claims

In lieu of filing a Motion to Dismiss for Improperly Joined Plaintiffs, the Defendants have asked that either Counts I through VI (those brought on behalf of NSI) or Count VII (claim brought by Plaintiffs) be dismissed by this Court.

While there is no binding precedent on point, several other circuit courts in the Commonwealth have held that parties with separate and distinct claims against the same defendant must plead and try these matters separately. *See Carufel v. American Isuzu Motors, Inc.*, 47 Va. Cir. 529 (1999); *Parrish v. Hicks*, 28 Va. Cir. 475 (1992); *Rasnick v. Pittston Co.*, 5 Va. Cir. 336 (1986); and *Dixon v. Robertson*, 5 Va. Cir. 544 (1979). This appears to apply to the present case, as NSI and the Plaintiffs have separate and distinct claims against the Defendants.

However, if this Court was to sustain this demurrer, and separate pleadings were filed, it would be well within this Court's discretion to consolidate these matters and try them together. *Clark v. Kimnach*, 198 Va. 737, 745, 96 S.E.2d 780, 787 (1957). Factors the Court considers in consolidating the matters are: if the suits arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party. *Id.* at 745.

Applying these factors to the present case, it seems very likely that these actions would be consolidated for trial. Therefore, it appears that sustaining the Defendants demurrer for improperly joined parties would not be an efficient use of this Court's resources, or those of the parties, as these matters could be consolidated for trial at the discretion of this Court. The Court overrules Defendants' Demurrer.

## Punitive Damages

For each count of its Motion for Judgment, Plaintiffs ask for compensatory and punitive damages. The Virginia Supreme Court has "repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Bowers v. Westvaco*, 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992) (citations omitted). A litigant, who seeks an award of punitive damages, must show that the defendant's acts were "so willful or wanton as to evince a conscious disregard

of the rights of others, as well as malicious conduct." *Id.* (*quoting Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988)).

Fairfax Medical contends that punitive damages are not available for the Breach of Contract claim or the Constructive Eviction claim, as they both arise from a contract action. The remaining claims, all tort claims, "rely upon conclusory allegations with no factual support." The Court accepts all pleadings as true, as is required in the Demurrer stage. Thus, the issue here is whether the actions of Fairfax Medical, by and through their agent, Hersh, could be considered egregious enough to warrant punitive damages. Virginia case law is well-settled on this point.

> We held, in *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988), that punitive damages are warranted not only by malicious conduct, but also by "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others." In *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984), we said: "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." We added a commentary to these cases in *Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 581-82, 391 S.E.2d 322, 327 (1990): "The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness. Because such consciousness and awareness are prerequisites, the use of the term 'negligence,' in defining the tort, is a misnomer, to the extent that negligence is equated with inadvertent neglect of a duty."

*Etherton v. Doe*, 268 Va. 209, 213-14, 597 S.E.2d 87, 90 (2004)

Plaintiffs and NSI seek punitive damages on all seven counts in the Motion for Judgment. Plaintiffs and NSI allege the following material facts, which are relied upon in support of punitive damage claims: Fairfax Medical knew about the asbestos in the Suite, Fairfax Medical knew that construction would disturb and disperse the asbestos, creating an unhealthy environment for Plaintiffs and their patients, Fairfax Medical did not observe the proper precautions for dealing with the asbestos, and Fairfax Medical was aware that the consequences of the construction work would most likely result in severe contamination of the premises. In spite of this, Fairfax Medical proceeded to

cut holes in the asbestos-contaminated ceiling materials, and, when the time came to clean-up the work zone, further damaged the Suite to the point of being uninhabitable. In fact, the Suite became one big hazard zone.

Assuming these allegations to be true, they show willful and wanton conduct on the part of the Defendants in complete disregard to the rights of NSI and the health of NSI's employees and patients. The Court overrules the Demurrer as to punitive damages with regards to Count III through Count VII.

However, the general rule is that exemplary or punitive damages are not allowed for breach of contract. *Goodstein v. Weinberg*, 219 Va. 105, 109, 245 S.E.2d 140, 143 (1978). "A plaintiff seeking punitive damages should allege a willful, independent tort in a count separate from that which alleges a breach of contract. This serves to notify the defendant of the precise allegations he must meet at trial to resist that part of the claim which supports punitive damages." *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983).

Plaintiffs have satisfied this requirement of the Virginia Supreme Court by alleging both breach of contract and several tort claims. Fairfax Medical has been notified of the "precise allegations" and the claims which support the punitive damages. Punitive damages may be recovered for the breach of contract through the independent tort claims alleged, but not for breach of contract claim itself. Additionally, punitive damages may not be recovered for constructive eviction as this claim relies on a breach of contract for its proper pleading and is not a separate and independent tort.

Defendants' final argument against the praying for punitive damages is to state that the requests for punitive damages in the amounts stated in the Motion for Judgment "clearly violate Virginia law." MFJ, ¶ 15. While Virginia may cap punitive damages, the prayer for relief is just that; a prayer. The Court finds no reason to deny punitive damages at the Demurrer stage based on "excessiveness." This is a matter for trial. Accordingly, the Court sustains the Demurrer to punitive damages with regards to Count I and II, Breach of Contract and Constructive Eviction.

### Attorney's Fees

The Virginia Supreme Court has held that "in the absence of a statutory or contractual provision to the contrary, attorney's fees are not recoverable by the prevailing litigant." *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). There is no contractual provision in the lease providing for the payments of NSI or the Plaintiff's attorney's fees, and there is no statute providing for the award of attorney's fees in a situation such as

the present case. The Court sustains the Demurrer in relation to the awarding of attorney's fees.

## Conclusion

The pleading rules in Virginia require that Plaintiffs NSI, Bernad, and Wasserman put the Defendants, Fairfax Medical and Hersh, on notice as to the nature of the claims in the Motion for Judgment. The Court overrules Defendants' Demurrers to Count I, and Count II as to Fairfax Medical, IV, VI, VII, VIII, and overrules the Demurrer to punitive damages for Counts III through VII, finding that Plaintiffs satisfied their pleading requirements. However, this Court sustains Defendants' Demurrers to Count II as to Hersh, sustains the Demurrer as to Count III, sustains the Demurrer for punitive damages as to Counts I and II, and sustains the Demurrer as to attorney's fees.