## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Jerry Deane et al.

v.

Kenneth J. Mady et al.

December 1, 2006

Case No. 05-57

BY JUDGE EDWARD L. HOGSHIRE

In this civil case, Plaintiffs Hurricane Sammy's Cleaning, Inc. (Hurricane Sammy's), Tom Garrison, and Jerry Deane request damages arising from allegedly defamatory statements made and published by the defendants, Kenneth Mady, RAHE, Inc., d/b/a McDonald's # 1632 (RAHE), Wayne Tyree, and Central Coca-Cola Bottling Company (Coca-Cola).

On July 25, 2006, Defendants Mady and RAHE filed a Motion to Drop Misjoined Party, requesting that this Court drop all but one plaintiff from the suit. The defendants contend that persons who are separately affected by the tortious act of another should not be permitted to unite as plaintiffs in an action for damages, rather, they must bring separate suits. For the following reasons, the Court denies the Defendants' Motion to Drop.

### I. Statement of Facts

For purposes of deciding the pending Motion to Drop Misjoined Party, the Court will consider only the facts as set forth in the pleadings. Plaintiffs Deane and Garrison are employees of plaintiff Hurricane Sammy's, which

provides cleaning and repair services for area businesses. Plaintiff's Motion for Judgment ("MJ"), ¶¶ 13, 15. Hurricane Sammy's began servicing soft drink machines owned by Coca-Cola in 2003. MJ, ¶ 14. In mid-2004, Hurricane Sammy's began servicing soft drink machines at a local McDonald's restaurant supervised by defendant Mady. MJ, ¶ 21. The plaintiffs allege that Mady knowingly published false and defamatory statements relating to Deane and Garrison's performance on July 6, 2004. MJ, ¶ 29. Furthermore, plaintiffs allege that defendant Tyree, a manager of Central Coca-Cola Bottling Co., Inc., republished these statements with knowledge of the statements' falsity or with reckless disregard of the truth or falsity of the statements. MJ, ¶ 36.

As a result of the defendants' allegedly tortious behavior, plaintiffs contend that Coca-Cola and other customers terminated business relations with the plaintiffs and that other potential clients declined to retain the plaintiffs' services. MJ, ¶ 94. The plaintiffs allege six counts against the following defendants:

Defamation: All defendants (MJ, at 11);

Conspiracy to Injure in Reputation, Trade Business, or Profession: All defendants (MJ, at 12);

Breach of Contract: Defendants Tyree and Coca-Cola (MJ, at 13);

Conspiracy to Induce Breach of Contract: All defendants (MJ, at 13);

Tortious Interference with Performance of Contract or With Business Relationship: Defendants Mady and RAHE (MJ, at 14);

Tortious Interference with Contractual and/or Business Expectancy: All defendants (MJ, at 15).

The plaintiffs ask for $2,000,000 in compensatory damages, lost profits, statutory damages, attorney's fees, and costs to be assessed jointly and severally; $350,000 in punitive damages assessed against each defendant; and $1,772.50 (plus interest) for breach of contract against Coca-Cola. (MJ, at 17.)

## II. *Analysis*

### A. *Statutory Basis for Misjoinder*

"Misjoinder is the improper joining together of parties, plaintiffs or defendants." *Carufel v. American Isuzu Motors, Inc.*, 47 Va. Cir. 529, 530 (Spotsylvania 1999) (*citing Black's Law Dictionary* (6th ed. 1990)). Furthermore, Va. Code § 8.01-5 grants to trial courts the power to drop misjoined parties: "No action or suit shall abate or be defeated by the ... misjoinder of parties, plaintiff or defendant, but whenever such ... misjoinder

shall be made to appear by affidavit or otherwise ... parties misjoined may be dropped by order of the court at any time as the ends of justice may require." Va. Code § 8.01-5.

Though the plain language of the statute suggests that dropping a party is committed to the discretion of the trial court, the Virginia Supreme Court has ruled that the ostensibly permissive language in such a statute is mandatory. *Lee v. Mutual Reserve Fund Life Assoc.*, 97 Va. 160, 162 (1899) ("The word *may* in a statute of this kind which is in furtherance of justice means the same as *shall*." (emphasis in original)); *see also, Wright v. Eli Lilly & Co.*, 66 Va. Cir. 195, 205 (Portsmouth 2004). Nonetheless, the phrase "as the ends of justice may require" grants substantial discretion to the trial court. *See Wright*, 66 Va. Cir. at 202 (comparing Va. Code § 8.01-5 to the wide latitude granted to trial courts under Federal Rule of Civil Procedure Rule 21 which permits a court to drop parties "on such terms as are just"); *Parrish v. Hicks*, 28 Va. Cir. 475, 477-78 (Albemarle 1992) ("[F]inding that *may* means *shall* does not end the inquiry. The statute directs the court to act "as the ends of justice may require." (emphasis in original)).

## B. *Circuit Court Decisions*

The lack of a statutory definition of misjoinder and the circular definition provided in *Black's Law Dictionary* do little to clarify the matter. Though "motions to drop" appear infrequently in Virginia case law, several Virginia courts have addressed the issue. Where damages have been demanded, recent Virginia Circuit decisions have granted motions to drop, even where the injuries resulted from a single occurrence. *See, e.g., Hamrick v. Shifflett*, 55 Va. Cir. 423 (Rockingham 2001) (dropping all but one plaintiff in a suit resulting from a single car accident); *Carufel*, 47 Va. Cir. at 531 (same); *Parrish*, 28 Va. Cir. at 480 ("[T]he plaintiffs must overcome a significant presumption that dropping a misjoined party is the proper remedy").

Though most Virginia circuit courts that have addressed the issue have agreed with the reasoning set forth in above-mentioned cases, the most recent case was decided differently. In *Neurology Servs. v. Fairfax Med. PWH, L.L.C.*, 67 Va. Cir. 1 (Fairfax 2005), three plaintiffs, two individuals and one corporation owned by one of the individuals, brought suit against three defendants. The underlying dispute concerned damages resulting from the defendant landlord's attempts to remove asbestos from rental property. The plaintiffs alleged seven counts ranging from breach of contract to battery. The corporate plaintiff was the named plaintiff in six of the counts, and the individual plaintiffs were the named plaintiffs in the battery count. *Id.* at 5-6.

The circuit court acknowledged the decisions of the other circuits and that those decisions appeared to apply to the suit in *Neurology Services*. The court also noted, however, that, if it were to drop one or more of the plaintiffs, that the court would have discretion to consolidate the cases. The court then applied the standard for consolidation to the motion to drop: "[T]he suits arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party." *Id.* at 27. Applying those factors, the court found that it would be wasteful to drop plaintiffs from the case and denied the defendants' motion to drop. *Id.* This appears to be the better understanding of misjoinder. It prevents the court from applying two different standards for what is essentially the same analysis: whether multiple plaintiffs (whether they begin the suit joined or not) have sufficiently similar cases that they should proceed together.

## C. *Application*

In this case, if the individual plaintiffs had filed separate actions, it would be within the discretion of the Court to consolidate the cases. *Clark v. Kimnach*, 198 Va. 737, 745 (1957) ("[T]he trial court has inherent power to order that several cases pending before it be tried together where they are the same nature, arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party."). Applying the criteria for consolidating cases, the claims by the plaintiffs arise from the same incident on July 6, 2004, involve the same issue of defamation, and will depend substantially on the same evidence. The plaintiffs, regardless of the specifics of their claims, will all attempt to prove that on July 6, 2004, Deane and Garrison were not intoxicated, that Mady published false and defamatory statements that Deane and Garrison were drunk, and that Tyree republished the statements with knowledge or reckless disregard of their falsity.

As for substantial rights, the defendants argue that permitting all of the plaintiffs to join at trial will confuse the jury and permit the plaintiffs to "stack" their claims. Though this is an understandable concern, particularly regarding Hurricane Sammy's breach of contract claim, the danger of the jury's misusing evidence presented by one plaintiff to reward another is slight. In this case, for example, the contract claim is relatively easy to distinguish from the tort claims. Here, any danger of confusion or prejudice can be

addressed in an appropriate jury instruction. The defendants further argue that a consolidated case would allow the plaintiffs to improperly sit in on each other's depositions on the grounds that they are parties. This line of argument merely begs the question; if the plaintiffs are properly joined as parties, there is no unfair prejudice in allowing the all parties to attend all depositions.

### III. *Conclusion*

The defendants correctly note that several circuit courts have granted motions to drop when the injuries are distinct. However, since the operative clause in Va. Code §8.01-5 is "as the ends of justice may require," it seems apt to analyze misjoinder under the standard for joinder of claims, which appropriately requires the Court to balance the many considerations inherent in "the ends of justice." Applying that standard, the plaintiffs could properly join their claims; therefore, the most efficient use of judicial resources, absent a clear showing of prejudice, is for the Court to try the case as currently joined and to deny the Motion to Drop.